# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
200 Park Avenue – 17th Floor
New York, New York 10166

Telephone (212) 209-3933
Facsimile (212) 209-7102

July 27, 2021

**BY ECF**

Hon. Sarah L. Cave, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                     *Re:*     ***Puma v. Dream Team Partners, LLC, et al.***
                               ***Case No. 19-CV-9824 (SLC)***

Dear Judge Cave,

       We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants' counsel seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel, as well as before the Court during a settlement conference held on May 25, 2021.

## I.     *The Need for the Court's Approval of the Agreement*

       As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Sarah L. Cave, U.S.M.J.
July 27, 2021
Page 2

## II. *Plaintiff's Claim for Unpaid Wages*

Plaintiff is a former employee hired to work as a kitchen helper/food preparer, dishwasher, food delivery worker, and porter for the defendants' restaurant. Plaintiff alleges working for the defendants from in or about 2000 until on or about August 20, 2019. Upon information and belief, defendant Sally Chironis took over ownership and operational control of the restaurant in or about 2010. The restaurant has since ceased operations.

Plaintiff contends working five (5) days per week for a total of fifty-six (56) hours per week. According to plaintiff, each work shift exceeded ten (10) hours.

With respect to his pay, plaintiff alleges that he was paid on a salary basis straight time for all hours worked. He contends being paid as follows:

- October 2013 – December 2013: $300/week[1]
- January 2014 – December 2015: $350/week
- January 2016 – December 2017: $400/week
- January 2018 – April 2019: $450/week
- May 2019 – August 20, 2019: $500/week.[2]

Assuming plaintiff's allegations were proven correct at trial, we estimated plaintiff's compensatory damages at approximately $79,750 in unpaid minimum wages and overtime compensation, with an equal amount in liquidated damages. Together with unpaid "spread of hours" premium and statutory damages for failure to provide wage statements, plaintiff's total estimated damages are approximately $180,000.

## III. *The Alleged Facts Contested by Defendants*

Defendants contest several facts alleged by plaintiff. For instance, according to the defendants, plaintiff primarily worked as a food delivery worker for a sum of approximately four and one-half (4½) per day, and approximately fifty (50) hours per week, not the fifty-six (56) hours asserted by Plaintiff. Defendants also contend that the individual defendant, Sally Chironis, was not plaintiff's actual employer because she did not participate in operating the restaurant on a day-to-day basis. Defendants further maintain that all of plaintiff's taxes were paid by the business and reimbursed separately to plaintiff, thereby adding to his overall income, which, according to the defendants exceeded the FLSA and NYLL requirements.

In addition to the foregoing, the defendants' inability to pay made this case extremely difficult to resolve. Defendants closed the restaurant in June 2020 due to COVID-19. By the end of that year, the defendants' past due rent exceeded $100,000. As of March 2021, defendants' landlord was seeking over $115,000 in past due rent. Ms. Chironis also has significant debt from a prior failed restaurant, and she defaulted on an SBA loan in the amount of $285,694, which has been in default since 2015. Ms. Chironis's personal tax returns reflect an

---

[1] The relevant six (6) year limitations period begins in October 2013.

[2] Dates are approximate based on plaintiff's best recollection.

excess of $1M in loss-carryovers due to the failed restaurant operations. In order to keep up with some of the debts, Ms. Chironis has refinanced her home of over 22 years several times. The mortgage on the home (which is in her husband's name only) is over $600,000 (and only has a value of $800k).

## IV. The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $5,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) days of the Court's approval of the Agreement and dismissal of the case.

## V. The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims, as well as in light of the defendants' dire financial condition.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during a settlement conference before the Court. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would not have been able to withstand a larger settlement or judgment. Defendants operated a small neighborhood restaurant with limited financial resources that has ceased operations. Moreover, the individual defendant has adequately demonstrated a severe financial hardship that would make it impossible for her to independently satisfy a larger settlement amount. The Agreement

Hon. Sarah L. Cave, U.S.M.J.
July 27, 2021
Page 4

significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within a few days of the Court's approval.

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during the settlement conference, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

## VI.   *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[3] Therefore, counsel seeks $1,472.94 in fees, and $580.75 in costs, for a total fee application of $2,053.68, which is far below the firm's lodestar.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with her wage-and-hour claims.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

---

[3] The firm's expenses total $580.75 consisting of the filing fee to commence the action ($400), and service of plaintiff's motion for default judgment. Because of the minimal amount of the settlement, the firm has agreed to waive its costs for service of process.

Respectfully submitted,

Justin Cilenti

Enclosures

cc:   Susanne Toes Keane, Esq. (by ECF)